IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. ex rel. SCHUMANN, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ASTRAZENECA PLC, et al. | : | NO. 03-5423 |

MEMORANDUM

Ditter, J.                                                                                                              March  29, 2012

This case involves a whistleblower's claim that two pharmaceutical companies entered into fraudulent agreements so that their brand-name drugs would be dispensed rather than equivalent generic drugs and so that they could evade their best price reporting obligations. Plaintiff-Relator, Karl Schumann, moved for reconsideration of my September 30, 2010 Order granting the BMS Defendants'[1] motion to dismiss.  For the reasons that follow, I will deny Schumann's motion.

**I.  STANDARD**

To succeed on a motion for reconsideration, the moving party must demonstrate (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a manifest injustice stemming from a clear error of law or fact.  *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  "Disagreement with the district court's ruling is not proper grounds for a motion to reconsider.  In light of the strong interest in finality of judgments, district courts grant motions for reconsideration sparingly."  *United States v. Citx Corp.*, No. 11-7, 2011 U.S. Dist. LEXIS

---

[1] The BMS Defendants are E.I. du Pont de Nemours and Company, DuPont Pharmaceuticals Company, and Bristol-Myers Squibb Company.

55435, *3 (E.D. Pa. May 24, 2011).

## II. DISCUSSION

The relator seeks reconsideration of my determination that he failed to sufficiently plead he was an original source.[2] He asks that I consider his lengthy declaration and argues that I erred by applying the wrong standard, by viewing the defendants' attack as factual rather than facial, and by failing to credit the relator's unchallenged allegations as true. Lastly, he asks that he be permitted leave to amend his already four-times-amended complaint to incorporate the facts set forth in his declaration.

### A. Consideration of The Relator's Declaration

The relator attached a twelve-page declaration to his motion for reconsideration setting forth information related to his work as Medco's Vice President for Pharmaceutical Contracting. The declaration covers events from December 1999 through early 2003.

On a motion for reconsideration, the court may only consider "new evidence." The Third Circuit explained this requirement, holding "'new evidence,' for reconsideration purposes, does not refer to evidence that a party obtains or submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251-52 (3d Cir. 2010). In *Howard*, the Third Circuit affirmed the district court's refusal to consider the "new evidence" because the plaintiffs had simply attempted "to submit the very evidence the District Court had found they had failed to present in

---

[2] The relator does not challenge my finding that his claims were the subject of public disclosure. Mot. For Reconsideration at 2, n.3.

their summary judgment motion." *Id*.

The information presented in the relator's declaration regarding his direct and independent knowledge pre-dates his initial complaint and was therefore available to him when he drafted and filed his fourth amended complaint. For the same reason, the facts set forth have not been newly discovered since the relator filed his opposition to the BMS defendants' motion to dismiss. The declaration therefore does not present "new evidence" and I may not consider it in deciding the pending motion for reconsideration.

### B. Original Source Standard

The relator argues here, as he did in his briefs opposing the motion to dismiss and at oral argument, that he should be required to have independent knowledge of just one element of the fraud to qualify as an original source. He asserts that I erroneously required that he know of *all* the elements of a cause of action. Notably, however, he does not cite to where in my opinion I improperly required him to have such knowledge. That is because he cannot.

I did not require that the relator possess "all relevant information." Instead, I found that he failed to show "the necessary direct and independent knowledge of fraud." 2010 U.S. Dist. LEXIS 109519 at *22-23. For example, I explained that the relator did "not allege direct and independent knowledge of facts to establish [False Claims Act] violations; rather, he merely alleges facts suggesting he had direct knowledge that BMS was selling Coumadin to Medco at a discount. I am left to guess how he obtained knowledge of fraud." *Id*.

I applied the proper standard and there was no error of law.

### C. The Relator's Allegations of Error Regarding His Pleadings

The relator asserts that BMS did not challenge the factual allegations related to his

3

original source status and that it was therefore error (1) to consider the jurisdictional attack related to his status as an original source as factual instead of facial and (2) to fail to accept his allegations as true.  The relator argues that it was a clear error of law not to accept that his "explicit factual allegations" of the BMS defendants' fraudulent acts were derived from "his direct negotiations with the BMS Defendants." Mot. For Recons. at 8-9.  He cites to the same paragraphs of his complaint that he referred to in his briefs in opposition to the motion to dismiss and at oral argument.

### 1. Jurisdictional v. Facial Attack

In my opinion dismissing the relator's claims against BMS, I stated that BMS had asserted a factual challenge to subject matter jurisdiction.  I noted not only that a subject matter challenge allowed me to consider matters outside of the pleadings – which I did in assessing whether there was a public disclosure – but also that a court may accept the facts alleged that are not challenged.  2010 U.S. Dist. LEXIS 109519 at *9.  When evaluating the relator's original source status, I found he "failed to *allege*" the necessary facts and noted the "only facts alleged in the complaint" were insufficient.  I did not cite to any information outside of the complaint or refuse to accept the truth of allegations related to his direct and independent knowledge of fraud in finding he failed to plead he was an original source. *Id.* at *21-24.

### 2. Relator's Allegations Were Accepted As True

As I noted in my earlier opinion, it is the relator's burden to establish that he is an original source.  He must support his allegations with competent proof and cannot rely on unsupported, conclusory allegations.  *See United States ex rel. Pritsker v. Sodexho, Inc.*, No. 03-6003, 2009 U.S. Dist. LEXIS 51469, *18 (E.D. Pa. Mar. 6, 2009).  For example, in *United States ex rel.*

*Hafter v. Spectrum Emer. Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999),[3] the court held a "plaintiff must allege specific facts – as opposed to mere conclusions – showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof." The court rejected the relator's "equivocal statements" and found he failed to allege facts showing direct and independent knowledge of fraudulent acts.

That is what happened here. I found that the relator "plainly allege[d] additional details about the circumstances of the fraud, *but fail[ed] to allege how he himself obtained 'direct and independent knowledge.'*" 2010 U.S. Dist. LEXIS 109519 at *23 (emphasis added).

### a. Best Price Scheme Allegations

The essential elements of the relator's best price fraud claim are that BMS concealed the true nature of the rebate and data purchase agreements with Medco so that BMS could avoid reporting the actual price it charged Medco when it made its best price reports to the government.

In the fifth iteration of his complaint – the pleading at issue here – the relator alleges that fraudulent rebate and data agreements were signed in early 1997, nearly three years before his employment with Medco which began in late December 1999. The agreement was first amended in January 1999, also prior to his employment. Three subsequent amendments occurred during the relator's time at Medco (February 2000, early April 2001, and April 2002), but he alleges that he was involved only in the last amendment to those agreements. Fourth Am. Compl. at ¶ 77

Although the relator asserts that he "regularly met" with BMS where the "history of the

---

[3] The Third Circuit has cited to *Hafter* with approval in other *qui tam* actions. *See e.g., United States ex rel. Feldstein v. Organon. Inc.*, 364 Fed. Appx. 738, 743 (3d Cir. 2010); *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 523 (3d Cir. 2007).

existing agreements was discussed" (*id.* at ¶ 54), he provides just three allegations that show his involvement in these allegedly sham agreements: his meetings with BMS employees on April 24, 2001; February 25, 2002; and March 27, 2002. The only facts he alleges to show his direct and independent knowledge of fraud are: (1) that he was present at a meeting to negotiate the price for Coumadin, (2) that he attended a meeting where the agreements were extended, and that (3) he discussed the extensions of these agreements with BMS employees. *Id.* at ¶ 55. These allegations fall far short of asserting any wrong.

      Negotiating a sales price or extension of a sales agreement is not a fraudulent act. Sellers always want to sell their product for as much as they can get. Buyers always want to pay as little as possible. They go back and forth. It happens everywhere every minute of every day. It is not illegal.

      The relator does allege fraud, but he does so by bald assertions that as a result of his participation in meetings to negotiate a sales price he had direct and independent knowledge that BMS would later use these agreements that had induced Medco to purchase Coumadin to fraudulently evade BMS's best price reporting obligation. *Id.* at ¶ 56. He makes a number of conclusory allegations that BMS entered into these agreements for the purpose of evading the best price requirements. *See e.g., Id.* at ¶¶ 44, 45, 56, 83. He further pleads that he had direct and independent knowledge of BMS's fraudulent plan by alleging that "BMS *internally determined* it would not report the discounts paid under these sham agreements as part of the Coumadin 'Best Price.'" *Id.* at ¶ 89 (emphasis added).

      His complaint is void, however, of any facts to support how he gained *direct* knowledge of BMS's "internal determination" and its intent to defraud the government. Instead, at best, he

6

alleges that "*he* regularly discussed with his *Medco* colleagues the highly confidential dealings with the BMS Defendants that had occurred *prior to his employment* with Medco" and from them he learned of the fraudulent kickback scheme and best price reporting evasion. *Id.* ¶ 54 (emphasis added).

The Third Circuit, however, has "interpreted direct to mean 'marked by absence of an intervening agency, instrumentality, or influence: immediate.'" *United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 335 (3d Cir. 2005); *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 520 (3d Cir. 2007) (same). The Court has clarified that direct knowledge "must have arisen from [relator's] 'own efforts, . . . not by the labors of others, and . . . [must not be] derivative of the information of others.'" *United States ex rel. Feldstein v. Organon. Inc.*, 364 Fed. Appx. 738, 743 (3d Cir. 2010). *See also, United States ex rel. Man Tai Lam v. Man Tai Lam*, 287 Fed. Appx. 396, 400 (5th Cir. 2008) ("Relators found to have direct and independent knowledge are those who actually viewed source documents or viewed first hand the fraudulent activity that is the basis for their qui tam suit. . . . In contrast, when a relator's claim is *based on knowledge received from other persons* it is not direct and independent.")

The relator's assertion of direct and independent knowledge of the best price fraud is further undermined by the timing and manner of his allegations. He first filed his complaint in September of 2003, nine months after his employment at Medco, and did not raise a claim of fraudulent, best price reporting against BMS. Instead, the relator's first mention of BMS's alleged fraudulent, best price reporting was in his first amended complaint in November 2005, nearly three years after his leaving Medco. Furthermore, the first three iterations of his complaint were pleaded "on information and belief," which cannot support the requisite direct and

independent knowledge to qualify as an original source.  *See e.g, In re Pharm. Indus. Average Wholesale Price Litig.*, 538 F. Supp. 2d 367, 385 (D. Mass. 2008) (holding "[a]n allegation 'on information and belief' is insufficient to meet the burden of demonstrating 'direct and independent' knowledge" and finding an 'information and belief' allegation' failed to satisfy the specificity requirements under Fed. R. Civ. P. 9(b) where relator did not specify any grounds for such belief); *United States ex rel. Unite Here v. Cintas Corp.*, No. 06-2413, 2007 U.S. Dist. LEXIS 98776, *39-42 (N.D. Cal. Dec. 21, 2007) (finding "[t]he essence of allegations made on information and belief is that they are not made based on direct, personal knowledge").

      The relator did not assert an actual claim against BMS under 31 U.S.C. § 3729 based on violations of BMS's best price reporting allegations until his third amended complaint filed in June 2009, six and a half years after leaving Medco.  *See,* 2010 U.S. Dist. LEXIS 109519 at *18-19, n.10.  He does not allege in his third or fourth amended complaints, or explain in his briefs, the revelations that made possible the obligatory passage from information and belief to averments of fact.

      In short, the relator has failed to plead adequately a best price claim against BMS.  Where he alleges facts of which he has direct and independent knowledge, he does not allege fraud, and where he alleges fraud, he does not allege facts of which he has direct and independent knowledge.

      **b. Kickback Scheme Allegations**

      The essential elements of the relator's fraudulent kickback claim are that BMS paid Medco, by way of the same sham rebate and data agreement involved in the best price scheme, to induce it to favor Coumadin over equivalent generic drugs.

The relator's allegations regarding his direct or independent knowledge of the kickback scheme are nearly identical to those supporting his best price allegations. He asserts that he was present at just two meetings: the April 24, 2001 meeting noted above "to negotiate an increase of the discount to 63% below the reported [wholesale acquisition cost]" (Fourth Am. Compl. at ¶ 86), and a January 25, 2002 meeting[4] "with BMS personnel to discuss continuing the Coumadin agreements" (*id.* at ¶ 87). As previously stated, above board negotiating a sales contract is not a fraudulent act. It is not until some fraudulent purpose is brought in the door can the shadow of illegality be present.

The relator's further allegations of fraudulent acts assert knowledge *on the part of BMS* without providing any underlying facts as to how *he* had direct or independent knowledge to support his allegations. *See e.g., id.* at ¶ 88 ("BMS was happy to accommodate [the Medco discounts] by contracting for bogus data BMS did not track or even want and for the payments of rebates so Medco would not insist on substitution of the generic"); ¶ 89 ("BMS *internally determined* it would not report the discounts paid" and "*BMS referred* to the deal with Medco as 'Pay to Play,' meaning that BMS would pay millions of dollars to Medco in discounts to ensure that Coumadin would be the 'House Brand' in Medco's mail order pharmacy").

The relator does allege that "the monies the BMS Defendants paid Medco were directly tied to the exclusive use of Coumadin . . . [and] were based on the amount of money it took to back into the total discounts Medco could demand." *Id.* at ¶ 104. He does not, however, allege how he gained direct and independent knowledge of these facts.

---

[4] Given the explanation of the meeting, this is likely the same meeting as the "February 25, 2002 " meeting referenced in paragraph 55. Regardless, the relator does not allege any direct or independent knowledge gained on either date.

The relator's allegations of BMS's fraudulent kickback scheme are thus equally conclusory and just as inadequate as his allegations regarding his best price scheme. The Fourth Amended Complaint supports the relator's direct and independent knowledge only of negotiations between Medco and BMS over the sales price of Coumadin, but is insufficient to establish that he had direct and independent knowledge of the alleged fraudulent acts.

### D.  No leave to amend

The Third Circuit has found that where a plaintiff is seeking to modify allegations in hopes of remedying factual deficiencies in prior pleadings, and is not seeking to add information or claims that were unknown earlier, "three attempts at a proper pleading is enough." *See Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F. 3d 70, 74 (3d Cir. 1994).  The relator was on notice of the challenge to his status as an original source and the need to plead direct and independent knowledge before he filed his fourth amended complaint – his fifth attempt at proper pleading.

Furthermore, as the BMS defendants point out, the relator was on notice that the defendants were seeking dismissal *with prejudice*.  Nonetheless, he failed to respond in either one of his opposition briefs to the BMS defendants' argument that further amendment would be futile in light of the opportunities he already had for improving his complaint. *See e.g., Virgin Islands v. Jacobs,* 2001 U.S. Dist. LEXIS 22511 (D.V.I. Dec. 28, 2001) (finding the government, by "not having objected to the dismissal with prejudice . . . waived the issue").

I will therefore not permit the relator to amend his complaint a fifth time.

**III.  CONCLUSION**

The relator's motion for reconsideration fails to point to a clear error of law or fact that would justify reversing my previous order dismissing his claims against the BMS defendants for failure to plead he was an original source.  The motion shall therefore be denied.

An appropriate order follows.